## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POPSOCKETS LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>Defendants. | Case No. 2:26-cv-1567<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff PopSockets LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint for trademark infringement under the Lanham Act against the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants"). All Defendants are knowingly and intentionally displaying, promoting, advertising, distributing, offering for sale, and selling infringing versions of Plaintiff's trademarks (the "Infringing Products"). In support hereof, Plaintiff, states as follows:

## I.     NATURE OF ACTION

1.      Plaintiff brings this action for trademark infringement under the Lanham Act, 15 U.S.C. § 1114 et seq. Plaintiff is the owner of valid and subsisting trademarks in certain federally registered marks. Defendant, without authorization, has used in commerce marks that are identical to, or similar to, Plaintiff's marks in connection with the advertisement, offer for sale, and sale of counterfeit products through online marketplace platforms.

1

## II.    JURISDICTION AND VENUE

2.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et. seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331.

3.    Personal jurisdiction over each Defendant satisfies constitutional due process because each Defendant has purposefully directed and expressly aimed its tortious activities at the Commonwealth of Pennsylvania and established sufficient minimum contacts with Pennsylvania by, among other things, being willing to accept an order for a product bearing Plaintiff's trademarks from a representative of Plaintiff with a Pennsylvania address, being willing to ship the products to that representative in Pennsylvania, and being willing to collect Pennsylvania sales tax. In addition, upon information and belief, each Defendant has sold additional products that directly infringe Plaintiff's trademarks to consumers within Pennsylvania not affiliated in any way with Plaintiff through the regular course of business, with the knowledge that Plaintiff is harmed in Pennsylvania as a result of its sales of infringing products to Pennsylvania residents. Plaintiff's claims arise out of and relate to Defendants' sales of infringing products to Pennsylvania residents through the regular course of business.

4.    Personal jurisdiction over each Defendant also satisfies constitutional due process because the causes of action asserted herein, including trademark infringement, are intentional torts, were aimed at Pennsylvania, and caused harm that each Defendant should have anticipated would be suffered by Plaintiff in Pennsylvania.

5.    Upon information and belief, Defendants have cooperated, communicated, shared information, and coordinated their efforts in order to create an infringing marketplace operating in parallel to the legitimate marketplace of Plaintiff and third parties authorized to sell products using

Plaintiff's trademarks, including: employing and benefitting from substantially similar paid advertising, marketing, and advertising strategies (e.g., search engine optimization or "SEO"), in order to make their online storefronts appear more relevant and target a consumer searching for products embodying Plaintiff's trademarks. By their actions, in addition to the damages associated with unauthorized use of Plaintiff's trademarks, Defendants are causing concurrent and irreparable harm to Plaintiff and the consuming public by: (1) reducing the online visibility of Plaintiff's trademarks; (2) diluting and eroding the retail market price for Plaintiff's trademarks; (3) causing overall degradation of the value of goodwill associated with Plaintiff's trademarks; (4) devaluing the exclusivity that enhances the worth of Plaintiff's reputation; and (5) increasing Plaintiff's overall cost to market its goods and educate consumers about Plaintiff's trademarks.

6.      Upon information and belief, Defendants are aware of Plaintiff and Plaintiff's trademarks and are aware that their infringement is likely to cause harm to Plaintiff in Pennsylvania.

7.      Plaintiff is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendants' unauthorized sale of the Infringing Products in direct competition with Plaintiff.

8.      Personal jurisdiction over each Defendant satisfies the Pennsylvania long-arm statute, and therefore Rule 4(k)(1)(A) of the Federal Rules of Civil procedure. 42 Pa. Cons. Stat. § 5322 (a) provides in pertinent part:

> "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the

Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

Defendants are subject to jurisdiction under the Pennsylvania long-arm statute because, upon information and belief, Defendants have committed the intentional tort of trademark infringement in Pennsylvania by using Plaintiff's Trademarks, accepting orders from Pennsylvania residents, shipping infringing products into Pennsylvania, and collecting Pennsylvania use tax on such orders.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391: Defendants do not reside in the United States and are subject to venue in any district. Further, Defendants solicit business from this Judicial District and, upon information and belief, conduct and transact significant business in this Judicial District.

## III.    INTRODUCTION

10.     Plaintiff files this action to combat online infringers and counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's federally registered trademarks POPSOCKETS (U.S. Reg. 5,486,563), PopGrip (U.S. Reg. 5,757,735)  (U.S. Reg. 6,005,170),  (U.S. Reg. 6,005,169) (collectively, the "POPSOCKET Trademarks") in connection with the sale and advertising of counterfeit products. *See* **Exhibit 1**. Like many other intellectual property right owners, Plaintiff suffers ongoing daily and sustained violation of its intellectual property rights at the hands of infringers, such as Defendants herein. Defendants have created Internet Stores by the dozens, using, distributing, and displaying copies, colorable imitations, and derivatives of the POPSOCKET Trademarks to sell

counterfeit versions of Plaintiff's products to unknowing customers. Plaintiff is and continues to be harmed, the consuming public is misled and confused, and Defendants earn substantial profits from their infringing activities.

11.     Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between Defendants and suggesting that Defendant Internet Stores share common manufacturing sources and that Defendants' infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their infringing operation, including changing the names of their Stores frequently, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's federally registered trademarks as well as to protect unknowing consumers from purchasing counterfeit products over the Internet. Accordingly, Plaintiff seeks injunctive and monetary relief.

## IV.     THE PARTIES

### Plaintiff PopSockets LLC

12.     Plaintiff is a Colorado limited liability company and is the creator and seller of high-quality mobile phone and tablet accessories, including its iconic phone, tablet, and charger grips (the "POPSOCKET Products"). Plaintiff markets these products through its POPSOCKET Trademarks, which allows consumers to purchase the product online through the company's website[1] and authorized wholesale and retail channels.[2] The POPSOCKET Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards and

---

[1] https://www.popsockets.com/
[2] Including major cellular carriers, licensed distributors, and retailers such as Amazon, Target, and Walmart

innovative designs. Among the purchasing public, genuine POPSOCKET Products are instantly recognizable as such. The POPSOCKET Trademarks have come to symbolize high quality, and the POPSOCKET Products are among the most recognizable mobile and tablet accessories in the United States.

13. Among Plaintiff's most important assets is the intellectual property associated with its POPSOCKET brand. Specifically, Plaintiff is the owner of several U.S. trademark registrations used to identify innovative products that it markets, sells, and licenses. Defendants' sales of the infringing products in violation of Plaintiff's trademark rights are irreparably damaging Plaintiff.

14. Plaintiff distributes and retails the high-quality POPSOCKET Products within Pennsylvania under the federally registered trademarks. Plaintiff's POPSOCKET Trademarks have been used in the United States in connection with the advertisement, design, distribution, and offer for sale of its POPSOCKET Products. The POPSOCKET Trademarks have become synonymous with the company's exacting quality standards. The unique designs of the POPSOCKET Products have achieved substantial popularity and recognition. Since its establishment, Plaintiff has introduced several variations of designs through its various e-commerce marketplaces and authorized retailers worldwide, including in the United States and Pennsylvania. Plaintiff's unique products have been advertised with its federally registered trademarks. Plaintiff continues to heavily advertise its unique products on all its e-commerce marketplaces, social media, and advertisements. Its websites and social media feature original content, reviews, and testimonials for the POPSOCKET Products.

15. Plaintiff sells its genuine POPSOCKET Products through the Company's website and authorized wholesale and retail channels. The POPSOCKET Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards. Among the

purchasing public, genuine POPSOCKET Products are instantly recognizable as such. In the United States and around the world, the POPSOCKET brand has come to symbolize high quality, and POPSOCKET Products are among the most recognizable in the United States.

16.     The POPSOCKET Trademarks are distinctive and identify the merchandise as goods originating from the Plaintiff. The registrations for the POPSOCKET Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the POPSOCKET Trademarks pursuant to 15 U.S.C. § 1057(b). The POPSOCKET Trademarks have been continuously used and never abandoned since their first use.

17.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting the POPSOCKET Trademarks. As a result, products bearing the POPSOCKET Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality mobile phone and tablet accessories sourced from Plaintiff. The POPSOCKET Products have become among the most popular of their kind in the U.S. and the world. The widespread fame, outstanding reputation, and significant goodwill associated with the POPSOCKET brand have made the POPSOCKET Trademarks invaluable assets of Plaintiff.

**Defendants**

18.     Defendants are individuals and business entities who, upon information and belief, primarily reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Pennsylvania and in this Judicial District, through the operation of fully interactive commercial websites or Defendant Internet Stores in various online marketplaces. Each Defendant targets the United States, including Pennsylvania, and has offered to sell and, on information and belief, has sold and continues to sell

7

counterfeit products to consumers within the United States, including Pennsylvania and this Judicial District.

19. Defendants are an interrelated group of infringers who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine POPSOCKET Products by unlawfully using Plaintiff's trademarks, while they actually sell inferior imitations of Plaintiff's POPSOCKET Products. Defendant Internet Stores share unique identifiers, such as common design elements, the same or similar knockoff products that they offer for sale, similar product descriptions, the same or substantially similar shopping cart platforms, accepted payment methods, and check-out methods, lack of contact information, and identically or similarly priced products and volume sale discounts. As such, Defendant Internet Stores establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence. The tactics used by Defendants to conceal their identities and the full scope of their infringing operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## V. DEFENDANTS' UNLAWFUL CONDUCT

20. Upon information and belief, at all relevant times hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the POPSOCKET Trademarks, including its exclusive right to use and license such intellectual property and the associated goodwill.

21. Defendants have purposefully directed some portion of their infringing activities towards consumers in this District through distributing, advertising, offering for sale, or selling products using or bearing Plaintiff's trademarks.

22.     Defendants directly engaged in unfair competition with Plaintiff by distributing, advertising, offering for sale, or selling goods bearing or using unauthorized reproductions or derivatives of Plaintiff's trademarks to consumers within the United States and this District through their Internet Stores.

23.     Defendants have targeted sales to Pennsylvania residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Pennsylvania, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold counterfeit products to residents of Pennsylvania.

24.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales of counterfeit products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. On information and belief, Plaintiff has not licensed or authorized Defendants to use any of the POPSOCKET Trademarks in the United States, and none of the Defendants are authorized retailers of the POPSOCKET Products.

25.     Many Defendants also deceive unknowing consumers by using the POPSOCKET Trademarks without authorization within the content, text, and/or meta-tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's products. Other e-commerce stores operating under Seller Aliases omit using the Trademark-in-Suit in the item title to evade enforcement efforts while using

9

strategic item titles and descriptions that will trigger their listings when consumers are searching for the POPSOCKET Products.

26.    Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

27.    Infringers, such as Defendants here, are typically in communication with each other. They regularly participate in QQ.com chat rooms and communicate through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28.    Defendants take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat infringement. For example, infringers take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing Defendants to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 2**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Pennsylvania residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Pennsylvania,

accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Pennsylvania.

29.     Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Furthermore, Defendant domain names often use privacy services that conceal the owners' identities and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms by using the identities listed in Schedule A of this Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

30.     The unauthorized products advertised and for sale in Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit products are manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

31.     Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the POPSOCKET Trademarks in connection with the unauthorized products, through, *inter alia*, the internet. The unauthorized products are not POPSOCKET branded products of the Plaintiff. Plaintiff did not manufacture, inspect, or package the counterfeit products and did not approve them for sale or distribution. Each of Defendant Internet Stores offers shipping to the United States, including Pennsylvania, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Pennsylvania.

11

32.     Defendants' use of the POPSOCKET Trademarks in connection with the advertising, distribution, offer for sale, and sale of counterfeit and infringing products, including the sale of counterfeit and infringing products into Pennsylvania, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

33.     Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling infringing products that infringe upon the POPSOCKET Trademarks unless preliminarily and permanently enjoined.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33.

35.     This is a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of federally registered POPSOCKET Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The POPSOCKET Trademarks are distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under the POPSOCKET Trademarks.

36.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing the POPSOCKET Trademarks without Plaintiff's permission.

37.     Plaintiff is the exclusive owner of POPSOCKET Trademarks. Plaintiff's U.S. registrations for POPSOCKET Trademarks are in full force and effect. *See* **Exhibit 1**. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the POPSOCKET

Trademarks and are willfully infringing and intentionally using the POPSOCKET Trademarks in connection with counterfeit items. Defendants' willful, intentional, and unauthorized use of the POPSOCKET Trademarks is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

38.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

40.     The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's POPSOCKET Products.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

41.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 40.

42.     Defendants' advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiff's products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of such products..

43.     Defendants knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display,

13

offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

44. By using Plaintiff's trademark in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product.

45. 41) Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the public is a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

46. 42) As a direct and proximate result of Defendants' wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its genuine products.

47. 43) Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

    i. Using Plaintiff's trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's trademarks;

14

ii.    Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's trademarks and associated with or derived from Plaintiff's trademarks;

iii.   Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe Plaintiff's trademarks;

iv.    Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

v.     Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

vi.    Further infringing Plaintiff's trademarks and damaging Plaintiff's goodwill;

vii.   Otherwise competing unfairly with Plaintiff in any manner;

viii.  Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized

15

by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's trademarks, or any reproduction, counterfeit copy, or colorable imitations thereof;

ix. Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

x. Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's trademarks, trade dress, or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and,

xi. Registering any additional domain names that use or incorporate any portion of the Plaintiff's trademarks; and,

B. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i. Displaying images protected by the Plaintiff's trademarks in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and

ii. Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not

16

manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's trademarks, trade dress, or any reproduction, counterfeit copy, or colorable imitation thereof; and,

C. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

D. Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: Alibaba, Aliexpress, Amazon, eBay, Etsy, Shein, Temu, Walmart, and Wish; payment processors such as PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, YouTube, LinkedIn, X; Internet search engines such as Google, Bing, and Yahoo; webhosts for Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the Plaintiff's trademarks; shall:

    i.    Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit POPSOCKETS Products using Plaintiff's trademarks, including any accounts associated with the Defendants listed on Schedule A;

    ii.    Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing products using Plaintiff's trademarks; and,

iii.    Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online Stores from any search index; and,

E.    That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.    For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's trademarks in its federally registered trademarks pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G.    For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H.    In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's trademarks;

I.    That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

J.    That Plaintiff be awarded any and all other relief that this Court deems equitable and just. Plaintiff demands trial by jury as to all causes of action so triable.

18

Dated: July 22, 2026

Respectfully submitted,

/s/ James E. Judge

Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No. 6346961)
Flener IP Law, LLC
77 West Washington Street, Suite 800
Chicago, Illinois 60602
(312) 724-8874
jjudge@fleneriplaw.com